

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-21-00184-CV

### IN THE INTEREST OF K.P.N., D.F.N., AND S.H.N.

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2019-PA-01795
Honorable Peter A. Sakai, Judge Presiding

Opinion by:     Lori I. Valenzuela, Justice

Sitting:        Luz Elena D. Chapa, Justice
                Irene Rios, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: October 27, 2021

AFFIRMED

P.N. appeals the trial court's order terminating her parental rights to her children K.P.N. (born 2003), D.F.N. (born 2005), and S.H.N. (born 2007).[1] P.N. argues the evidence is legally and factually insufficient to support the trial court's finding that termination is in the best interests of the children. We affirm.

### BACKGROUND

On September 4, 2019, the Texas Department of Family and Protective Services filed its Original Petition for Protection of a Child, for Conservatorship, and for Termination in a Suit Affecting the Parent-Child Relationship seeking to remove the children from P.N.'s care. On

---

[1] To protect the privacy of the minor children, we use initials to refer to the children and their biological parents. Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8(b)(2).

September 16, 2019, the trial court held a full adversary hearing. The Department was appointed temporary managing conservator of the children, and P.N. was appointed temporary possessory conservator. The trial court ordered P.N. to comply with a service plan, which included completing a psychological or psychiatric evaluation; attending counseling; participating in and completing parenting classes; and undertaking drug and alcohol assessments scheduled by the Department. After two permanency hearings on March 6, 2020 and May 22, 2020, the court found P.N. had not complied with her service plan. The Department ultimately pursued termination of P.N.'s parental rights.

Beginning approximately one year after removal, the trial court held a four-day bench trial[2] at which P.N. appeared. The trial court heard testimony from ten witnesses: (1) the children's licensed professional counselor, Elizabeth Trinkle; (2) Department caseworker Sonia Garcia; (3) the father's licensed professional counselor, Patrick Vargas; (4) Department caseworker Niki Motal; (5) family drug court monitor Vanessa Knight; (6) the CASA advocate; (7) the children's fictive kin; (8) Department caseworker Thania Perez; (9) J.N., the father; and (10) P.N. At the conclusion of trial, the trial court signed an order terminating P.N.'s parental rights pursuant to sections 161.001(b)(1)(N), (O), and (P) and made a finding that termination of P.N.'s parental rights was in the best interests of the children. On appeal, P.N. only challenges the legal and factual sufficiency of the evidence on which the trial court relied to conclude that termination was in the best interests of the children.

## STANDARD OF REVIEW

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and

---

[2] The trial on the merits took place on August 14, 2020; October 29, 2020; October 30, 2020; and December 10, 2020.

powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate P.N.'s parental rights and that termination was in the best interests of the children. TEX. FAM. CODE § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). To determine whether the Department presented clear and convincing evidence, a legal sufficiency review requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* at 266. We "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re R.S.-T.*, 522 S.W.3d 92, 98 (Tex. App.—San Antonio 2017, no pet.). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.F.C.*, 96 S.W.3d at 266. Nevertheless, "we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence." *In re S.L.M.*, 513 S.W.3d 746, 748 (Tex. App.—San Antonio 2017, no pet.). If a reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally sufficient. *Id.* at 747.

In contrast, in conducting a factual sufficiency review, we must review and weigh all the evidence, including the evidence that is contrary to the trial court's findings. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the challenged finding. *In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient only if "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

In both legal and factual sufficiency review, the trial court, as factfinder, is the sole judge of the weight and credibility of the evidence. *In re A.F.*, No. 04-20-00216-CV, 2020 WL 6928390, at \*2 (Tex. App.—San Antonio Nov. 25, 2020, no pet.) (mem. op.). We must defer to the factfinder's resolution of disputed evidentiary issues and cannot substitute our judgment for that of the factfinder. *See, e.g., In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

## BEST INTERESTS

*Applicable Law*

P.N. challenges the legal sufficiency of the trial court's order that termination of her parental rights was in the best interests of the children. There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g., In re R.S.-T.*, 522 S.W.3d at 97. To determine whether the Department satisfied this burden, the Texas Legislature has provided several factors[3] for courts to consider regarding a parent's

---

[3] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5)

willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has provided a similar list of factors[4] to determine a child's best interest. TEX. FAM. CODE § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). "A trier of fact may measure a parent's future conduct by [her] past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). This conduct can include drug use. Drug use can destabilize the home and expose children to physical and emotional

---

whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[4] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

harm if not resolved. *See, e.g.*, *In re K.J.G.*, 2019 WL 3937278, at *8 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied).

***Application***

P.N. asserts the "desires of the children were [the] sole issue controlling the matter from start to finish" and contends that the Department blocked every effort for family therapy, which P.N. consistently asked for from the outset of the case. P.N. also claims she was not afforded the opportunity to complete her service plan. According to P.N., due to her failure to complete inpatient drug treatment at the beginning of the suit, she was not allowed to engage in family violence prevention services. Instead, P.N. contends she completed services on her own, including individual therapy; outpatient drug treatment; and a parenting class.

In response, the State asserts the evidence overwhelmingly supports termination was in the children's best interest because P.N. was a habitual drug user who had opportunities to get treatment and failed to do so. The State alleges the teenage children expressed they wanted no contact with her and were concerned for their safety if she were allowed back into their lives.

The children's desires were expressed through the testimony of Trinkle, Garcia, Motal, and the CASA advocate. At the time of trial, the children were ages 16, 15, and 13. The children conveyed to others, including P.N., they did not want contact with P.N. The children expressed they felt safer with their fictive kin placement than their mother. The children had anxiety and sleep problems about returning to their mother. The eldest had nightmares that her mother would take her and her siblings away from their fictive kin placement. The children's desires were appropriate considerations for the trial court in assessing what is in the children's best interests. *See Holley*, 544 S.W.2d at 371.

A parent's drug use and failure to comply with a service plan supports a finding that termination is in the best interest of the child. *In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—

Houston [14th Dist.] 2016, pet. denied). P.N.'s habitual use of illicit drugs led to the Department's involvement as early as 2006. P.N. admitted to methamphetamine use during the period of removal, including within a month of trial. At trial, P.N. testified, "I think I'm going to have a problem with methamphetamine use for the long haul." She also admitted to using methamphetamines while the children were in the home.

During the pendency of suit, P.N. was discharged from the drug court and inpatient drug treatment for noncompliance. The Department arranged for her to return to treatment, but she refused to return to inpatient treatment. P.N. later enrolled herself in an outpatient program, but she revoked her release of information form resulting in the Department's inability to confirm if she completed the program. At trial, P.N. testified that the outpatient program told her she completed the program but did not give her a certificate because of a positive drug test. P.N.'s inability to complete drug treatment, incorporated as part of her service plan, supports the trial court's finding that termination was in the best interest of the children. *See In re L.G.R.*, 498 S.W.3d at 204.

The children expressed fear that either they or their parents would be hurt during physical altercations arising from parental arguments in the home. To address the domestic violence, the Department made numerous programs available to P.N. and explained to her that she could access the programs while undergoing inpatient drug treatment. Importantly, access to family violence prevention services is contingent on sobriety, but P.N. failed to complete treatment and maintain sobriety. This resulted in an inability to access this and other services. Thus, the common thread weaving together P.N.'s inability to either access or complete programs and treatment necessary to comply with her service plan is her longstanding, continuous, and ongoing use of illicit drugs. *See In re E.D.*, 419 S.W.3d at 620 (best interest determination may measure future conduct by past conduct).

P.N. was also unable to maintain stable and appropriate housing. She was not employed and lived on only social security income. The Department was concerned that the social security income check would not provide stable income for the entire household. Moreover, P.N. failed to enroll the children in school for approximately two years preceding removal. The trial court could have inferred P.N.'s recent, deliberate failure to ensure her children were enrolled in school would continue. *In re D.M.*, 452 S.W.3d 462 (Tex. App.—San Antonio 2014, no pet.).

The trial court could have determined that the children's placement with their fictive kin was in their best interest. Since January 9, 2020, the children had been placed with fictive kin. While placed with their fictive kin, the children were able to see their older brother who turned 18 prior to the end of the proceedings. The Department's investigation resulted in favorable findings regarding the fictive kin's parenting abilities. The children's fictive kin testified that she had seen tremendous improvement in the children since their placement, and Motal testified the children were doing well in their placement and were anxious for the court proceedings to conclude.

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of P.N.'s parental rights was in the best interests of her children. *In re J.F.C.*, 96 S.W.3d at 266. We therefore hold legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule P.N.'s arguments to the contrary.

## CONCLUSION

We affirm the trial court's order of termination.

Lori I. Valenzuela, Justice